## LEGATO LAW, PLLC
405 Capitol Street, Suite 701
Charleston, WV 25301

Telephone:(304) 340-9910                                          Facsimile:(304) 340-9915

October 2, 2013

Ms. Francine Spencer
McDowell County Circuit Clerk
90 Wyoming Street, Suite 201
Welch, WV 24801
   *via facsimile: (304) 436-6994*

        Re:    Betty J. Almond, *et al.* V. Pfizer, Inc.
               Civil Action No.: 13-C-159

Dear Ms. Spencer,

        This letter is in response to the letter sent to you by Mr. Legg in the above-referenced civil action. This case is a single civil action with multiple Plaintiffs suing the same Defendant.

        Pursuant to West Virginia Rules of Civil Procedure, Rule 3(a), a separate filing fee was paid for each of the Plaintiffs. I believe the intent of the rule was to ensure proper payment by your office, which did occur and thus no further action by you is warranted. However, opposing counsel may disagree.

        Should you deem further action necessary, because this action involves a single Complaint assigned to one judge, it may be less confusing to assign any additional action numbers, if deemed necessary by you, as 13-C-159a, 13-C-159b through 13-C-159n.

        Thank you.

                                        Sincerely,

                                        *Jeaneen Legato*
                                        Jeaneen Legato

ajw

cc:
H. Blair Hahn, Esq.
Erik W. Legg, Esq

---

**EXHIBIT**
*A*

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

USPS CERTIFIED MAIL™



9214 8901 1251 3410 0000 0361 32

Pfizer Inc.
C. T. Corporation System
5400 D Big Tyler Road
CHARLESTON, WV 25313



**Natalie E. Tennant**
Secretary Of State
State Of West Virginia
**Phone:** 304-558-6000
866-767-8683
**Visit us online:**
www.wvsos.com

**Control Number:** 347247

**Defendant:** Pfizer Inc.
5400 D Big Tyler Road
CHARLESTON, WV 25313 US

**Agent:** C. T. Corporation System

**County:** McDowell

**Civil Action:** 13-C-159

**Certified Number:** 92148901125134100000036132

**Service Date:** 9/12/2013

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in the name and on behalf of your corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in the name and on behalf of your corporation as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office**.*

Sincerely,

Natalie E. Tennant
Secretary of State

EXHIBIT

_B_

# SUMMONS

## IN THE CIRCUIT COURT OF MCDOWELL COUNTY, WEST VIRGINIA

BETTY J. ALMOND;
BERTHA BELCHER;
ALICIA BLAIR;
MILDRED BLANKENSHIP;
VERA BROOKS;
VALERIE J. DUCKWORTH;
DIANA S. FARLEY;
BARBARA FINNERTY;
LELLA FLANAGAN;
BRENDA GAY;
ALICE M. HEATH;
CHARLOTTE IMAN;
GLENNA KENNEDY;
DEBORAH L. YOUNG.

*Plaintiffs,*

v.

PFIZER INC.,

*Defendant.*

(Civ. Action No. 13-C-159)

ACCEPTED FOR
SERVICE OF PROCESS
2013 SEP 12 PM 2: 56
SECRETARY OF STATE
STATE OF WEST VIRGINIA

To:   **PFIZER INC.**
      *(Served Thru Secretary of State)*

**IN THE NAME OF THE STATE OF WEST VIRGINIA,** you are hereby summoned and required to serve upon <u>J. JEANEEN LEGATO</u>, plaintiff's attorney, whose address is <u>LEGATO LAW, PLLC, 405 CAPITAL STREET, SUITE 701, CHARLESTON, WEST VIRGINIA, 25301</u>, an answer, including any related counterclaim you may have, to the complaint filed against you in the above-styled action, a true copy of which is herewith delivered to you. You are required to serve your answer within <u>30</u> days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above styled civil action.

Dated: September 4, 2013

_[signature]_
Clerk, Circuit Court of McDowell County

By: _[signature]_
Deputy

# CIVIL CASE INFORMATION STATEMENT
## CIVIL CASES
(Other than Domestic Relations)

In the Circuit Court, __McDowell__ _____ County, West Virginia

## I. CASE STYLE:

**Plaintiff(s)**

Betty Almond;

Bertha Belcher;

et al.

**vs.**

**Defendant(s)** Pfizer Inc.

235 East 42nd Street

New York, NY 10017
    Street

    **City, State, Zip**

    **Street**

    **City, State, Zip**

    **Street**

    **City, State, Zip**

    **Street**

    **City, State, Zip**

Case # _____

Judge: _____

| Days to Answer | Type of Service |
|---|---|
| 30 | Secretary of State |
| | |
| | |
| | |
| | |

Original and _2_ copies of complaint enclosed/attached.

SCA-C100.02 / 1 of 2

| PLAINTIFF: Betty Almond; Alicia Blair; et al. | CASE NUMBER: |
| DEFENDANT: Pfizer Inc. | |

**II. TYPE OF CASE:**

- ☑ General Civil
- ☐ Mass Litigation
  (As defined in T.C.R. Rule XIX (c))

  - ☐ Asbestos
  - ☐ Carpal Tunnel Syndrome
  - ☐ Diet Drugs
  - ☐ Environmental
  - ☐ Industrial Hearing Loss
  - ☐ Silicone Implants
  - ☐ Other: _____

- ☐ Habeas Corpus/Other Extraordinary Writ
- ☐ Other: _____

- ☐ Adoption
- ☐ Administrative Agency Appeal
- ☐ Civil Appeal from Magistrate Court
- ☐ Miscellaneous Civil Petition
- ☐ Mental Hygiene
- ☐ Guardianship
- ☐ Medical Malpractice

**III. JURY DEMAND:** ☑ Yes ☐ No

CASE WILL BE READY FOR TRIAL BY (MONTH/YEAR): 10 / 1 / 2014

**IV. DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS DUE TO A DISABILITY?** ☐ YES ☑ NO

IF YES, PLEASE SPECIFY:

- ☐ Wheelchair accessible hearing room and other facilities
- ☐ Interpreter or other auxiliary aid for the hearing impaired
- ☐ Reader or other auxiliary aid for the visually impaired
- ☐ Spokesperson or other auxiliary aid for the speech impaired
- ☐ Other: _____

Attorney Name: J. Jeaneen Legato

Firm: Legato Law, PLLC

Address: 405 Capitol St., Suite 701, Charles

Telephone: 304.340.9910

Dated: 9-4-2013

*Representing:*

☑ Plaintiff ☐ Defendant

☐ Cross-Complainant ☐ Cross-Defendant

*J. Jeaneen Legato*
Signature

☐ Proceeding Without an Attorney

# IN THE CIRCUIT COURT OF MCDOWELL COUNTY, WEST VIRGINIA

BETTY J. ALMOND;
BERTHA BELCHER;
ALICIA BLAIR;
MILDRED BLANKENSHIP;
VERA BROOKS;
VALERIE J. DUCKWORTH;
DIANA S. FARLEY;
BARBARA FINNERTY;
LELLA FLANAGAN;
BRENDA GAY;
ALICE M. HEATH;
CHARLOTTE IMAN;
GLENNA KENNEDY;
DEBORAH L. YOUNG.

    *Plaintiffs,*

    v.

PFIZER INC.,

    *Defendant.*

(Civ. Action No. 13-C-159)

RECEIVED & FILED
CIRCUIT COURT
MCDOWELL COUNTY, W.VA.
2013 SEP -4 PM 3: 41

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, by and through their undersigned counsel, hereby bring this Complaint for damages against Defendant Pfizer, and allege as follows:

### I. INTRODUCTION

1.    This is an action for damages relating to the Defendant Pfizer's design, manufacture, sale, testing, marketing, advertising, promotion, and/or distribution of the unsafe prescription drug Lipitor® ("LIPITOR"), which is also sold under the generic name ATORVASTATIN CALCIUM.

2.    Plaintiffs bring their claims for personal injuries and damages suffered as

a result of ingesting LIPITOR.

3.      LIPITOR is associated with, and causes, an increased risk of type 2 diabetes and/or blood glucose levels diagnostic for type 2 diabetes. Because of this increased risk of type 2 diabetes, LIPITOR is also associated with, and causes an increased risk of heart disease, blindness, neuropathy, kidney disease, and other dangerous conditions.

4.      At all times relevant to this action, Defendant Pfizer intentionally, recklessly, and/or negligently concealed, suppressed, omitted, and/or misrepresented the risks, dangers, defects, and disadvantages of LIPITOR.

5.      At all times relevant to this action, Defendant Pfizer intentionally, recklessly, and/or negligently advertised, promoted, marketed, sold, and/or distributed LIPITOR as a safe prescription medication when, in fact, Defendant Pfizer had reason to know, and/or did know, that LIPITOR was not safe for its intended purposes, and that LIPITOR had serious undisclosed side effects and posed unreasonably dangerous risks.

6.      At all times relevant to this action, Defendant Pfizer is and was strictly liable for injuries caused by LIPITOR because the drug is unreasonably dangerous in that it was not accompanied by adequate warnings about its dangers.

## II. PARTIES

### A.    Plaintiffs

7.      Plaintiff Betty Almond developed type 2 diabetes as a direct result of her ingestion of LIPITOR. Plaintiff Almond is an adult resident of the Town of Beaver, located in Raleigh County, West Virginia

8.      Plaintiff Bertha Belcher developed type 2 diabetes as a direct result of her

ingestion of LIPITOR. Plaintiff Belcher is an adult resident of the Town of Laeger, located in McDowell County, West Virginia.

9. Plaintiff Alicia Blair developed type 2 diabetes as a direct result of her ingestion of LIPITOR. Plaintiff Blair is an adult resident of the City of Brooklyn, New York and a citizen of the State of New York.

10. Plaintiff Mildred Blankenship developed type 2 diabetes as a direct result of her ingestion of LIPITOR. Plaintiff Blankenship is an adult resident of the Town of Panther, located in McDowell County, West Virginia.

11. Plaintiff Vera Brooks developed type 2 diabetes as a direct result of her ingestion of LIPITOR. Plaintiff Brooks is an adult resident of the Town of Laeger, located in McDowell County, West Virginia.

12. Plaintiff Valerie J. Duckworth developed type 2 diabetes as a direct result of her ingestion of LIPITOR. Plaintiff Duckworth is an adult resident of the Town of Parsons, located in Tucker County, West Virginia.

13. Plaintiff Diana S. Farley developed type 2 diabetes as a direct result of her ingestion of LIPITOR. Plaintiff Farley is an adult resident of the Town of Harts, located in Lincoln County, West Virginia.

14. Plaintiff Barbara Finnerty developed type 2 diabetes as a direct result of her ingestion of LIPITOR. Plaintiff Finnerty is an adult resident of the City of Unadilla, New York, and a citizen of the State of New York.

15. Plaintiff Lella Flanagan developed type 2 diabetes as a direct result of her ingestion of LIPITOR. Plaintiff Flanagan is an adult resident of the Town of Summersville, located in Nicholas County, West Virginia.

3

16. Plaintiff Brenda Gay developed type 2 diabetes as a direct result of her ingestion of LIPITOR. Plaintiff Gay is an adult resident of the City of Albany, New York, and a citizen of the State of New York.

17. Plaintiff Alice Heath developed type 2 diabetes as a direct result of her ingestion of LIPITOR. Plaintiff Heath is an adult resident of the City of Victor, New York, and a citizen of the State of New York.

18. Plaintiff Charlotte Iman developed type 2 diabetes as a direct result of her ingestion of LIPITOR. Plaintiff Iman is an adult resident of the City of Charleston, located in Kanawha County, West Virginia.

19. Plaintiff Glenna Kennedy developed type 2 diabetes as a direct result of her ingestion of LIPITOR. Plaintiff Kennedy is an adult resident of the Town of Iaeger, located in McDowell County, West Virginia.

20. Plaintiff Deborah L. Young developed type 2 diabetes as a direct result of her ingestion of LIPITOR. Plaintiff Young is an adult resident of the Town of Saxon, located in Raleigh County, West Virginia.

21. Hereinafter, the above named Plaintiffs, when referred to collectively, shall be identified generally as "Plaintiffs."

22. Pre-trial joiner of Plaintiffs' claims is proper because they all arise out of the same acts and/or omissions of Defendant and involve common questions of law and/or fact.[1] The liability claims of each of these Plaintiffs will involve nearly identical

---

[1] Plaintiffs' joinder of claims in this case is analogous to the claims brought in *J.C. ex rel. Cook v. Pfizer, Inc.*, a case recently decided by Judge Chambers in the Southern District of West Virginia, because they satisfy the same transaction and/or occurrence requirement. *J.C. ex rel. Cook v. Pfizer, Inc.*, 3:12-CV-04103, 2012 WL 4442518 (S.D.W. Va. Sept. 25, 2012) *appeal dismissed*, 12-2207, 2013 WL 3487397 (4th Cir. July 12, 2013). The *J.C. ex rel. Cook* case involved similar products liability and negligence claims brought by multiple plaintiffs against Pfizer for its defective production, marketing, and warning of the prescription drug Zoloft®. *Id.* After removal, and on the plaintiffs' motion to remand for lack of complete

facts. The issues relating to Pfizer's testing, manufacturing, research, development, adverse reporting, and post-marketing studies will be nearly identical for each Plaintiff.

23. Furthermore, issues relating to why the Food and Drug Administration ("FDA") requested Pfizer change its warning label in 2012, as well as Pfizer's marketing of LIPITOR to doctors and women, will also be nearly identical for each Plaintiff.

24. In addition, several other common liability facts will be presented to demonstrate that Defendant Pfizer knew or should have known that taking LIPITOR can and does cause type 2 diabetes. Discovery will be identical for all Plaintiffs' claims with respect to Defendant's conduct and liability because all claims arise out of the same acts and/or omissions of Defendants and involve common questions of law and/or fact.

25. Here, each of the Plaintiffs was prescribed, purchased and ingested LIPITOR and each subsequently developed type 2 diabetes as a result. Furthermore, common liability facts will be presented to demonstrate that Defendant Pfizer knew or should have known that LIPITOR causes type 2 diabetes.

26. The Plaintiffs' claims arise out of the same "transaction or occurrence," namely, the mass production, marketing and sale and/or distribution of the pharmaceutical product LIPITOR without adequate labeling of known risks and inherent dangers related thereto. All the material facts related to Defendant's liability are common to the Plaintiffs: the product ingested is identical in design, manufacturing and labeling; the Defendant's actionable conduct preceding the entry of the product into the chain of distribution; the warning labels to the medical community are necessarily identical; the

diversity, the Southern District of West Virginia found the pre-trial joinder of such claims to be proper because the plaintiffs' claims were "logically related, and [arose] from the same series of transactions or occurrences—namely the production, distribution, and promotion of Zoloft®." *Id.* at *5.

Defendant's interaction with the FDA both before and during the exposure of the defective product to consumers; the Defendant's knowledge of adverse risks associated with its product (what it knew and when it knew it) is wholly unrelated to individual interactions and transactions with each consumer; and the causal pharmacology of the defective product is premised upon nationally peer reviewed medical literature and studies. Thus, joinder of these actions promotes trial convenience; expedites the final determination of disputes and prevents multiple lawsuits alleging the same transaction or occurrence. As such, pre-trial joinder of these claims is proper.

**B.    Defendant**

27.    Defendant Pfizer is a Delaware corporation with its principal place of business at 235 East 42nd Street, New York, New York. Pfizer is one of the largest pharmaceutical companies in the United States, whether measured by number of prescriptions written, revenues, or market capitalization.

28.    At all times relevant hereto, Defendant Pfizer and/or its predecessors in interest were engaged in the business of research, designing, testing, formulating, inspecting, labeling, manufacturing, packaging, marketing, distributing, producing, processing, promoting, and selling the drug LIPITOR in a number of states, including but not limited to West Virginia, and New York. Defendant Pfizer is licensed and registered in West Virginia and has transacted and conducted substantial business in West Virginia. As a result of its West Virginia business operations, Defendant Pfizer has derived substantial revenue from goods and products sold, purchased, and/or used in West Virginia.

29.    Defendant Pfizer expected and/or should have expected its acts and/or

omissions described herein to have consequences within West Virginia, New York, and throughout the United States generally.

### III. JURISDICTION & VENUE

30.     Jurisdiction in this Court is proper under W. Va. Code § 56-3-33 because Defendant Pfizer transacts business in the state of West Virginia and has committed torts in whole or in part against Plaintiffs in West Virginia.

31.     Venue is proper in McDowell County, pursuant to W. Va. Code § 56-1-1, because the Defendant does business in this county.

32.     At all relevant times, Defendant Pfizer was engaged in the business of designing, testing, manufacturing, packaging, marketing, advertising, distributing, promoting, and selling LIPITOR with both the knowledge and intent that it would be distributed in McDowell County, West Virginia, and it was in fact so distributed.

33.     Defendant Pfizer is authorized to do business in the State of West Virginia, transacts business within the State of West Virginia and McDowell County, and performed tortious acts within the State of West Virginia and McDowell County that caused or contributed to the Plaintiffs' injuries. This Court has jurisdiction over Pfizer pursuant to W. Va. Code § 56-3-33 because Pfizer regularly does or solicits business and derives substantial revenue from goods used or consumed or services rendered in the State of West Virginia.

34.     Plaintiffs have timely filed this lawsuit within the applicable statutory limitations period. This is an action for damages that exceed the minimum jurisdictional limits of this Court.

## IV. FACTUAL ALLEGATIONS

### A. Factual Allegations Relating to Defendant

35.    At all times herein mentioned, Defendant Pfizer, by and through its agents, servants, and/or employees failed to adequately warn physicians and consumers, including Plaintiffs herein, of the risk of developing type 2 diabetes from using LIPITOR.

36.    LIPITOR is an HMG-CoA reductase inhibitor and a member of the drug class known as statins.

37.    LIPITOR is prescribed to reduce the amount of cholesterol and other fatty substances in the blood.

38.    Parke-Davis Pharmaceutical Research, a division of Warner-Lambert Company obtained approval from the FDA to market LIPITOR on December 17, 1996. Warner-Lambert entered into a co-marketing agreement with Pfizer to sell Lipitor, and thereafter those companies began distributing and selling Lipitor throughout the United States in 1997. On June 19, 2000, Pfizer acquired Warner-Lambert and all rights to Lipitor.

39.    Despite its knowledge of data indicating that LIPITOR use is causally related to the development of type 2 diabetes and/or blood glucose levels diagnostic for type 2 diabetes, Pfizer promoted and marketed LIPITOR as safe and effective for persons such as Plaintiffs throughout the United States, including the state of West Virginia.

40.    On August 11, 2011, the Division of Metabolism and Endocrinology Products of the FDA requested that Pfizer make labeling changes for Lipitor based upon the FDA's comprehensive review, including clinical trial data.

41.    In February 2012, Pfizer complied with the FDA request and added the

following language to its Warnings and Precautions Section: "Increases in HbA1c and fasting serum glucose levels have been reported with HMG-CoA reductase inhibitors, including LIPITOR."

42.     Until the February 2012 change, LIPITOR's label had never warned patients of any potential relation between changes in blood sugar levels and taking LIPITOR.

43.     Despite the February 2012 label change, LIPITOR's label continues to fail to warn consumers of the serious and life-threatening risk of developing type 2 diabetes *per se* when using LIPITOR.

44.     At all times material hereto, Defendant knew or should have known that the risks associated with using LIPITOR included the development of type 2 diabetes, along with the serious complications that accompany the disease.

45.     At all times material hereto, Defendant, by and through its agents, servants, and/or employees, negligently, recklessly and/or carelessly marketed, distributed, and/or sold LIPITOR without adequate instructions or warnings of the drug's serious side effects and unreasonably dangerous risks.

**B.     Factual Allegations Relating to Plaintiffs**

46.     Plaintiff Betty Almond was prescribed LIPITOR and used it as directed from approximately 1998 until approximately 2012.

47.     Plaintiff Almond developed and was diagnosed with type 2 diabetes on or about 2000, after initiating her LIPITOR treatment. As a result, for the rest of her life she must undergo regular testing of her blood glucose levels, adhere to a restrictive diabetic diet, and take medication to control her diabetes. Due to her diabetes, she is now at

9

markedly increased risk of heart disease, blindness, neuropathy, and kidney disease.

48.     Plaintiff Bertha Belcher was prescribed LIPITOR and used it as directed from approximately 1996 until approximately 2005.

49.     Plaintiff Belcher developed and was diagnosed with type 2 diabetes on or about 1998, after initiating her LIPITOR treatment. As a result, for the rest of her life she must undergo regular testing of her blood glucose levels, adhere to a restrictive diabetic diet, and take medication to control her diabetes. Due to her diabetes, she is now at markedly increased risk of heart disease, blindness, neuropathy, and kidney disease.

50.     Plaintiff Alicia Blair was prescribed LIPITOR and used it as directed from approximately 1999 until approximately 2013.

51.     Plaintiff Blair developed and was diagnosed with type 2 diabetes on or about 1999, after initiating her LIPITOR treatment. As a result, for the rest of her life she must undergo regular testing of her blood glucose levels, adhere to a restrictive diabetic diet, and take medication to control her diabetes. Due to her diabetes, she is now at markedly increased risk of heart disease, blindness, neuropathy, and kidney disease.

52.     Plaintiff Mildred Blankenship was prescribed LIPITOR and used it as directed from approximately 2007 until approximately 2013.

53.     Plaintiff Blankenship developed and was diagnosed with type 2 diabetes on or about 2009, after initiating her LIPITOR treatment. As a result, for the rest of her life she must undergo regular testing of her blood glucose levels, adhere to a restrictive diabetic diet, and take medication to control her diabetes. Due to her diabetes, she is now at markedly increased risk of heart disease, blindness, neuropathy, and kidney disease.

54.     Plaintiff Vera Brooks was prescribed LIPITOR and used it as directed

from approximately 2000 until approximately 2008.

55.     Plaintiff Brooks developed and was diagnosed with type 2 diabetes on or about 2005, after initiating her LIPITOR treatment. As a result, for the rest of her life she must undergo regular testing of her blood glucose levels, adhere to a restrictive diabetic diet, and take medication to control her diabetes. Due to her diabetes, she is now at markedly increased risk of heart disease, blindness, neuropathy, and kidney disease.

56.     Plaintiff Valerie Duckworth was prescribed LIPITOR and used it as directed from approximately 1996 until approximately 2011.

57.     Plaintiff Duckworth developed and was diagnosed with type 2 diabetes on or about 2005, after initiating her LIPITOR treatment. As a result, for the rest of her life she must undergo regular testing of her blood glucose levels, adhere to a restrictive diabetic diet, and take medication to control her diabetes. Due to her diabetes, she is now at markedly increased risk of heart disease, blindness, neuropathy, and kidney disease.

58.     Plaintiff Diana Farley was prescribed LIPITOR and used it as directed from approximately 1996 until approximately 2012.

59.     Plaintiff Farley developed and was diagnosed with type 2 diabetes on or about 2010, after initiating her LIPITOR treatment. As a result, for the rest of her life she must undergo regular testing of her blood glucose levels, adhere to a restrictive diabetic diet, and take medication to control her diabetes. Due to her diabetes, she is now at markedly increased risk of heart disease, blindness, neuropathy, and kidney disease.

60.     Plaintiff Barbara Finnerty was prescribed LIPITOR and used it as directed from approximately 1996 until approximately 2013.

61.     Plaintiff Finnerty developed and was diagnosed with type 2 diabetes on or

about 2001, after initiating her LIPITOR treatment. As a result, for the rest of her life she must undergo regular testing of her blood glucose levels, adhere to a restrictive diabetic diet, and take medication to control her diabetes. Due to her diabetes, she is now at markedly increased risk of heart disease, blindness, neuropathy, and kidney disease.

62. Plaintiff Lella Flanagan was prescribed LIPITOR and used it as directed from approximately 1996 until approximately 2011.

63. Plaintiff Flanagan developed and was diagnosed with type 2 diabetes on or about 2000, after initiating her LIPITOR treatment. As a result, for the rest of her life she must undergo regular testing of her blood glucose levels, adhere to a restrictive diabetic diet, and take medication to control her diabetes. Due to her diabetes, she is now at markedly increased risk of heart disease, blindness, neuropathy, and kidney disease.

64. Plaintiff Brenda Gay was prescribed LIPITOR and used it as directed from approximately 1996 until approximately 2007.

65. Plaintiff Gay developed and was diagnosed with type 2 diabetes on or about 2006, after initiating her LIPITOR treatment. As a result, for the rest of her life she must undergo regular testing of her blood glucose levels, adhere to a restrictive diabetic diet, and take medication to control her diabetes. Due to her diabetes, she is now at markedly increased risk of heart disease, blindness, neuropathy, and kidney disease.

66. Plaintiff Alice Heath was prescribed LIPITOR and used it as directed from approximately 2003 until approximately 2008.

67. Plaintiff Heath developed and was diagnosed with type 2 diabetes on or about 2005, after initiating her LIPITOR treatment. As a result, for the rest of her life she must undergo regular testing of her blood glucose levels, adhere to a restrictive diabetic

diet, and take medication to control her diabetes. Due to her diabetes, she is now at markedly increased risk of heart disease, blindness, neuropathy, and kidney disease.

68.     Plaintiff Charlotte Iman was prescribed LIPITOR and used it as directed from approximately 2005 until approximately 2013.

69.     Plaintiff Iman developed and was diagnosed with type 2 diabetes on or about 2006, after initiating her LIPITOR treatment. As a result, for the rest of her life she must undergo regular testing of her blood glucose levels, adhere to a restrictive diabetic diet, and take medication to control her diabetes. Due to her diabetes, she is now at markedly increased risk of heart disease, blindness, neuropathy, and kidney disease.

70.     Plaintiff Glenna Kennedy was prescribed LIPITOR and used it as directed from approximately 1995 until approximately 2013.

71.     Plaintiff Kennedy developed and was diagnosed with type 2 diabetes on or about 2012, after initiating her LIPITOR treatment. As a result, for the rest of her life she must undergo regular testing of her blood glucose levels, adhere to a restrictive diabetic diet, and take medication to control her diabetes. Due to her diabetes, she is now at markedly increased risk of heart disease, blindness, neuropathy, and kidney disease.

72.     Plaintiff Deborah Young was prescribed LIPITOR and used it as directed from approximately 2006 until approximately 2009.

73.     Plaintiff Young developed and was diagnosed with type 2 diabetes on or about 2007, after initiating her LIPITOR treatment. As a result, for the rest of her life she must undergo regular testing of her blood glucose levels, adhere to a restrictive diabetic diet, and take medication to control her diabetes. Due to her diabetes, she is now at markedly increased risk of heart disease, blindness, neuropathy, and kidney disease.

74. Plaintiffs agreed to initiate LIPITOR treatment in an effort to reduce their risk of developing heart disease. Plaintiffs relied on claims made by Defendant Pfizer that LIPITOR has been clinically shown to reduce the risk of developing heart disease.

75. Had Defendant Pfizer properly disclosed the risks associated with LIPITOR, Plaintiffs would have avoided the risk of diabetes by either not using LIPITOR at all or by closely monitoring their blood glucose levels to see if the drug was adversely affecting their metabolism.

76. As alleged herein, as a direct, proximate, and legal result of Defendant's negligence and wrongful conduct described herein, and the unreasonably dangerous and defective characteristics of the drug LIPITOR, Plaintiffs suffered severe and permanent physical and emotional injuries, including, but not limited to, type 2 diabetes. Plaintiffs have endured pain and suffering and suffered economic loss, including significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

## FIRST CAUSE OF ACTION
### [Negligence]

77. Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

78. Defendant Pfizer has engaged in the business of selling, distributing, supplying, manufacturing, marketing and/or promoting LIPITOR, and through that conduct has knowingly and intentionally placed LIPITOR into the stream of commerce with full knowledge that it reaches consumers such as Plaintiffs who ingested it.

79. Defendant did in fact sell, distribute, supply, manufacture, and/or promote LIPITOR to Plaintiffs and to their prescribing physicians. Additionally, Defendant

14

expected the LIPITOR that it was selling, distributing, supplying, manufacturing, and/or promoting to reach – and LIPITOR did in fact reach – prescribing physicians and consumers, including Plaintiffs and their prescribing physicians, without any substantial change in the condition of the product from when it was initially distributed by Defendant.

80.     At all times material hereto, Defendant had a duty to exercise reasonable care to consumers, including Plaintiffs herein, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of LIPITOR.

81.     At all relevant times to this action, Defendant Pfizer owed a duty to properly warn Plaintiffs, physicians, consumers, and the public of the risks, dangers and adverse side effects of LIPITOR, including the increased risk of diabetes, when the drug was used as intended or in a way that Defendant Pfizer could reasonably have anticipated.

82.     Defendant breached its duty of reasonable care to Plaintiffs in that it negligently promoted, marketed, distributed, and labeled the subject product. Defendant failed to exercise reasonable care to warn of the dangerous side effect of developing diabetes from LIPITOR use, even though this side effect was known or reasonably scientifically knowable at the time of distribution.

83.     Defendant knew or should have known that its failure to warn LIPITOR users of potential side effects could not have been discovered through the exercise of reasonable care and, in fact, was not discovered by Plaintiffs.

84.     Defendant's negligence caused serious injury to Plaintiffs, who used

LIPITOR in its intended and foreseeable manner.

85.     Plaintiffs' injuries and damages alleged herein were and are the direct and proximate result of the carelessness and negligence of Defendant, including, but not limited to, one or more of the following particulars:

    a.      In its design, development, research, manufacture, testing, packaging, promotion, marketing, sale, and/or distribution of the subject product;

    b.      In its failure to warn or instruct, and/or adequately warn or adequately instruct, users of the subject product, including Plaintiffs herein, of LIPITOR's dangerous and defective characteristics;

    c.      In its design, development, implementation, administration, supervision, and/or monitoring of clinical trials for the subject product;

    d.      In its promotion of the subject product in an overly aggressive, deceitful, and fraudulent manner, despite evidence as to the product's defective and dangerous characteristics due to its propensity to cause diabetes;

    e.      In representing that the subject product was safe for its intended use when, in fact, the product was unsafe for its intended use;

    f.      In failing to perform appropriate pre-market testing of the subject product;

    g.      In failing to perform appropriate post-market surveillance of the

16

subject product;

h. In failing to adequately and properly test LIPITOR before and after placing it on the market;

i. In failing to conduct sufficient testing on LIPITOR which, if properly performed, would have shown that LIPITOR had the serious side effect of causing type 2 diabetes;

j. In failing to adequately warn Plaintiffs and their healthcare providers that the use of LIPITOR carried a risk of developing type 2 diabetes and that patients' blood glucose should be closely monitored;

k. In failing to provide adequate post-marketing warnings or instructions after Defendant knew or should have known of the significant risk of diabetes associated with the use of LIPITOR; and

l. In failing to adequately and timely inform Plaintiffs and the healthcare industry of the risk of serious personal injury, namely diabetes, from LIPITOR ingestion as described herein.

86. Defendant knew or should have known that consumers, such as Plaintiffs herein, would foreseeably suffer injury as a result of Defendant's failure to exercise reasonable and ordinary care.

87. As a direct and proximate result of Defendant Pfizer's negligence, willful, wanton, and/or intentional acts, omissions, misrepresentations and/or otherwise culpable acts described herein, Plaintiffs suffered severe and permanent physical and emotional

injuries, including, but not limited to, type 2 diabetes. Plaintiffs have endured pain and suffering, suffered economic loss including significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

## SECOND CAUSE OF ACTION
### [Strict Liability: Defect Due to Inadequate Warning]

88.　　Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

89.　　At all times mentioned herein, Defendant was in the business of manufacturing, compounding, packaging, distributing, recommending, advertising, promoting, supplying, and selling the pharmaceutical product LIPITOR.

90.　　Defendant knew or should have known that Plaintiffs would not and could not have discovered any defect in the subject product through the exercise of reasonable care.

91.　　At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture such that it was unreasonably dangerous to the user, and was so at the time it was distributed by Defendant and ingested by Plaintiffs. The defective condition of LIPITOR was due in part to the fact that it was not accompanied by proper warnings regarding the possible side effect of developing diabetes as a result of its use.

92.　　As a direct and proximate result of Defendant's failure to adequately label, instruct, and/or warn users of the serious risk of developing diabetes associated with the use of LIPITOR, Plaintiffs, who all used LIPITOR in an intended and foreseeable manner, suffered severe and permanent physical and emotional injuries, including, but not limited to, type 2 diabetes. Plaintiffs have endured pain and suffering, suffered

economic loss including significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

### THIRD CAUSE OF ACTION
[Breach of Implied Warranty]

93. Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

94. At all times mentioned herein, Defendant manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied, and sold LIPITOR, and prior to the time that it was prescribed to Plaintiffs, Defendant impliedly warranted to Plaintiffs that the subject product was of merchantable quality and safe and fit for the use for which it was intended.

95. The drug was expected to reach and did in fact reach consumers, including Plaintiffs, without substantial change in the condition in which it was manufactured and sold by Defendant Pfizer.

96. In reliance upon Defendant Pfizer's implied warranty, Plaintiffs used LIPITOR as prescribed and in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendant.

97. Contrary to the implied warranty for the subject product, LIPITOR was not of merchantable quality, and it was neither safe nor fit for its intended uses and purposes, as alleged herein.

98. As a direct and proximate result of Defendant Pfizer's breach of implied warranty, Plaintiffs suffered severe and permanent physical and emotional injuries, including, but not limited to, type 2 diabetes. Plaintiffs have endured pain and suffering,

19

suffered economic loss including significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

## FOURTH CAUSE OF ACTION
[Fraud]

99. Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

100. Defendant misrepresented to Plaintiffs, their prescribing physicians, and the healthcare industry the safety and effectiveness of LIPITOR and/or fraudulently, intentionally, and/or negligently concealed material information, including adverse information, regarding the safety and effectiveness of LIPITOR.

101. Defendant made misrepresentations and actively concealed adverse information when Defendant knew, or should have known, that LIPITOR had defects, dangers, and characteristics that were other than what Defendant had represented to Plaintiffs and the healthcare industry generally. Specifically, Defendant actively concealed from Plaintiffs, their prescribing physicians, the health care industry, and the consuming public that:

  a. Since at least 1996 Defendant and/or its predecessors were in possession of data demonstrating that LIPITOR increases the risk of type 2 diabetes, and the risk of increased blood glucose to levels diagnostic for type 2 diabetes;

  b. There had been insufficient studies by Defendant and/or its predecessors regarding the safety and efficacy of LIPITOR in women before and after its product launch;

20

c. LIPITOR was not fully and adequately tested by Defendant and/or its predecessor for the risk of developing type 2 diabetes; and

d. Testing and studies by other entities as reported in the scientific literature has shown that the use of LIPITOR increases the risk of type 2 diabetes.

102. These misrepresentations and/or active concealment alleged were perpetuated directly and/or indirectly by Defendant.

103. Defendant knew or should have known that these representations were false, and it made the representations with the intent or purpose of deceiving Plaintiffs, their prescribing physicians, and the healthcare industry.

104. Defendant made these false representations with the intent or purpose that Plaintiffs, their prescribing physicians, and the healthcare industry would rely on them, leading to the use of LIPITOR by Plaintiffs as well as the general public.

105. At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the falsity of the statements being made by Defendant and believed them to be true. Had they been aware of said facts, their physicians would not have prescribed and Plaintiffs would not have utilized the subject drug.

106. Plaintiffs justifiably relied on and/or were induced by Defendant's misrepresentations and/or active concealment and relied on the absence of safety information which Defendant did suppress, conceal, or fail to disclose to Plaintiffs' detriment.

107. Defendant had a post-sale duty to warn Plaintiffs, their prescribing physicians, and the general public about the potential risks and complications associated

21

with LIPITOR in a timely manner.

108. Defendant made the representations and actively concealed information about the defects and dangers of LIPITOR with the intent and specific desire that Plaintiffs' prescribing physicians and the consuming public would rely on such information, or the absence of information, in selecting LIPITOR as a treatment.

109. As a result of the concealment and/or suppression of the facts set forth above, Plaintiffs ingested LIPITOR and suffered injuries as set forth herein.

### FIFTH CAUSE OF ACTION
### [Fraudulent Concealment]

110. Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

111. Defendant Pfizer fraudulently concealed information with respect to LIPITOR in the following particulars:

    a.    Defendant Pfizer fraudulently withheld and concealed information about the substantial risk of developing type 2 diabetes associated with using LIPITOR; and

    b.    Defendant Pfizer represented through its labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that LIPITOR was safe.

112. Defendant Pfizer had sole access to material facts concerning the dangers and unreasonable risks of LIPITOR.

113. Defendant Pfizer omitted, suppressed, and/or concealed material facts concerning the dangers and risk of injuries associated with the use of LIPITOR, namely diabetes.

114. Defendant Pfizer's purpose was willfully blind to, ignored, downplayed, avoided, and/or otherwise understated the serious nature of the risks associated with the use of LIPITOR in order to increase sales.

115. The concealment of information by Defendant Pfizer about the risk of developing diabetes associated with LIPITOR was intentional.

116. Plaintiffs and their physicians were unaware of the substantial risk of developing diabetes associated with and caused by LIPITOR which Defendant Pfizer concealed from them.

117. Had they known the truth, Plaintiffs' doctors would not have prescribed, and Plaintiffs would not have ingested, LIPITOR.

118. As a direct and proximate consequence of Defendant Pfizer's fraudulent concealment, Plaintiffs sustained injuries and damages alleged herein.

## SIXTH CAUSE OF ACTION
### [Unjust Enrichment]

119. Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

120. Plaintiffs conferred a benefit on Defendant by purchasing LIPITOR.

121. Defendant Pfizer has profited and benefited from the purchase and use of LIPITOR by Plaintiffs, as was the intended and expected result of Defendant Pfizer's conscious wrongdoing.

122. Defendant Pfizer has voluntarily accepted and retained those profits and benefits, derived from Plaintiffs, with full knowledge and awareness that, as a result of Defendant Pfizer's fraud and other conscious and intentional wrongdoing, Plaintiffs were not receiving a product of the quality, nature, or fitness that had been represented by

Defendant Pfizer, or that Plaintiffs, as reasonable consumers, expected to receive.

123. It would be inequitable for Defendant to retain this money because Plaintiffs did not, in fact, receive a safe and efficacious drug.

124. By virtue of the conscious wrongdoing alleged above, Defendant Pfizer has been unjustly enriched at the expense of Plaintiffs, who are entitled in equity, and hereby seek the disgorgement and restitution of Defendant Pfizer's wrongful profits, revenues and benefits, to the extent and in the amount deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendant Pfizer's unjust enrichment.

### SEVENTH CAUSE OF ACTION
**[Punitive Damages]**

125. Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

126. At all times material hereto, Defendant knew or should have known that LIPITOR was inherently dangerous with respect to the risk of diabetes.

127. At all times material hereto, Defendant attempted to misrepresent and did misrepresent facts concerning the safety of LIPITOR.

128. Defendant's misrepresentations included knowingly withholding material information from the medical community and the public, including Plaintiffs, concerning the safety of the subject product.

129. At all times material hereto, Defendant knew and recklessly disregarded the fact that LIPITOR causes the chronic illness diabetes.

130. Notwithstanding the foregoing, Defendant continued to aggressively market the subject product to consumers, including Plaintiffs herein, without disclosing

the aforesaid side effect.

131.    Defendant knew of the subject product's lack of warnings regarding the risk of diabetes, but it intentionally concealed and/or recklessly failed to disclose that risk and continued to market, distribute, and sell LIPITOR without said warnings so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs herein, in conscious and/or negligent disregard of the foreseeable harm caused by LIPITOR.

132.    Defendant's intentional and/or reckless failure to disclose information deprived Plaintiffs of necessary information to enable them to weigh the true risks of using LIPITOR against its benefits.

133.    As a direct and proximate result of Defendant's willful, wanton, careless, reckless, conscious, and deliberate disregard for the rights and safety of its consumers, Plaintiffs suffered severe and permanent physical and emotional injuries, including, but not limited to, type 2 diabetes. Plaintiffs have endured pain and suffering, suffered economic loss including significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiffs' injuries and damages are permanent and will continue into the future.

134.    Defendant's aforesaid conduct was committed with knowing, conscious, careless, reckless, willful, wanton, and deliberate disregard for the rights and safety of consumers, including Plaintiffs, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendant and deter it from similar conduct in the future.

### EIGHTH CAUSE OF ACTION
[Unfair or Deceptive Acts or Practices: W. Va. Code § 46A-6-101, *et seq.*]

135.    Plaintiffs repeat and re-allege each and every allegation of this Complaint

as if set forth in full in this cause of action.

136. Defendant Pfizer has a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, development, manufacture, promotion, and sale of LIPITOR.

137. Had the Defendant Pfizer not engaged in the deceptive conduct described herein, Plaintiffs would not have purchased and/or paid for LIPITOR and would not have incurred related medical costs.

138. Specifically, Plaintiffs and Plaintiffs' physicians were misled by the deceptive conduct described herein.

139. Defendant Pfizer's deceptive, unconscionable, or fraudulent representations and material omissions to patients, physicians, and consumers, including Plaintiffs, constituted unfair and deceptive acts and trade practices in violation of the West Virginia Consumer Credit and Protection Act (WVCCPA).

140. Defendant Pfizer engaged in wrongful conduct while at the same time obtaining, under false pretenses, substantial sums of money from Plaintiffs for LIPITOR that Plaintiffs would not have paid had Defendant Pfizer not engaged in unfair and deceptive conduct.

141. Defendant Pfizer's actions, as complained herein, constitute unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or trade practices in violation of W. Va. Code § 46A-6-101, *et seq*.

142. Plaintiffs were injured by the cumulative and indivisible nature of Defendant Pfizer's conduct. The cumulative effect of Defendant Pfizer's conduct directed at patients, physicians, and consumers was to create a demand for and sell

LIPITOR. Each aspect of Defendant Pfizer's conduct combined to artificially create sales of LIPITOR.

143. The medical community relied upon Defendant Pfizer's misrepresentations and omissions in determining which drug to utilize.

144. By reason of the unlawful acts engaged in by Defendant Pfizer, Plaintiffs have suffered ascertainable loss and damages as alleged herein.

145. As a direct and proximate result of Defendant Pfizer's wrongful conduct, Plaintiffs were damaged by paying in whole or in part for LIPITOR.

146. As a direct and proximate result of Defendant Pfizer's violations of the WVCCPA, Plaintiffs have sustained economic losses and other damages for which Plaintiffs are entitled to statutory and compensatory damages, and declaratory relief, in an amount to be proven at trial.

## NINTH CAUSE OF ACTION
### [False Advertising: W. Va. Code § 32A-1-2]

147. Plaintiffs repeat and re-allege each and every allegation of this Complaint as if set forth in full in this cause of action.

148. Defendant Pfizer knowingly misrepresented LIPITOR as a safe and effective drug and knowingly made false statements and omissions of material fact concerning the properties, ingredients, characteristics, qualities, benefits, uses, efficacy, safety, and/or testing of LIPITOR to the Plaintiffs and the general public.

149. In its labeling, marketing, direct-to-consumer advertising, promotion, sale, and distribution of LIPITOR, Defendant Pfizer made untrue, deceptive, and/or misleading material assertions, representations, and/or statements downplaying risks associated with LIPITOR and exaggerated the drug's safety to Plaintiffs and the general

public when Defendant Pfizer had actual knowledge of the serious, adverse health effects associated with LIPITOR.

150. Defendant Pfizer intended to increase the sale and consumption of LIPITOR by falsely marketing LIPITOR as safe and effective, and by concealing facts regarding the dangerous properties of LIPITOR, to thereby induce Plaintiffs' physician to prescribe LIPITOR and to ultimately cause Plaintiffs to purchase and consume LIPITOR.

151. In purchasing and consuming LIPITOR, Plaintiffs reasonably relied upon Defendant Pfizer's false and misleading assertions and omissions of material fact that LIPITOR was safe and effective.

152. Defendant Pfizer's actions as described herein constitute unlawful, unfair, and deceptive trade practices within the meaning of W. Va. Code § 32A-1-2.

153. As a direct and proximate result of Defendant Pfizer's false statements as herein alleged, Plaintiffs ingested LIPITOR and suffered severe and debilitating injuries and other damages, including but not limited to, cost of medical care, rehabilitation, and pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

> a. Compensatory damages, including without limitation past and future medical, incidental, and hospital expenses; past and future pain and suffering; past and future emotional distress; past and future loss of enjoyment of life; past and future lost wages and loss of earning capacity; and consequential damages;

b. A full refund of all purchase costs Plaintiffs paid for LIPITOR;

c. Punitive damages in an amount sufficient to impress upon Defendant the seriousness of its conduct and to deter similar conduct in the future;

d. Disgorgement of profits;

e. Restitution;

f. Costs and fees of this action, including reasonable attorney's fees;

g. Prejudgment interest and all other interest recoverable by law; and

h. Such other additional and further relief as Plaintiffs may be entitled to in law or in equity.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all counts and issues so triable.

Respectfully submitted,

By: _____

J. Janeen Legato (WV State Bar No. 6978)
Legato Law, PLLC
405 Capitol Street, Suite 701
Charleston, WV 25301
Telephone: (304) 340-9910
Facsimile: (304) 340-9915

/s/ H. Blair Hahn
H. Blair Hahn (*pro hac* pending)
Richardson, Patrick, Westbrook & Brickman, LLC
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464

Telephone: (843) 727-6500
Facsimile: (843) 216-6509

ATTORNEYS FOR PLAINTIFFS

September 4, 2013

BETTY ALMOND                      vs. PFIZER


LINE   DATE    ACTION

 1 09/04/13   COMPLAINT FILED, SUMMONS AND COMPLAINT GIVEN BACK TO COUNSEL FOR
 2            SERVICE THROUGH SOS WITH 30 DAYS TO ANSWER
 3 09/16/13   1 SUMMONS AND 1 COMPLAINT RETURNED BY SOS ON PFIER INC
 4 09/30/13   LETTER FROM FERRELL, WHITE, & LEGG
 5 10/02/13   FAXED MEMO FROM LEGATO LAW RESPONE TO MR. LEGG LETTER
 6 10/03/13   LETTER FILED.
 7 10/03/13   AMENDED COMPLAINT FILED ADDING 26 NEW PLAINTIFFS
 8            SUMMONS AND COMPLAINT GIVEN BACK TO ATTORNEY FOR SERVICE
 9 10/07/13   CERTFICATE OF SERVICE; MOTION FOR PRO HAC VICE ADMISSION OF
10            CHRISTIAAN A. MARCUM
11 10/07/13   VERIFIED STATEMENT F APPLICATION OF CHRISTIAAN A. MARCUM
12            FOR PRO HAC VICE ADMISSION
13 10/07/13   PROPOSED ORDER GRANTING CHRISTIAAN A. MARCUM PRO HAC VICE
14            ADMISSION *** SENT TO JUDGE FOR SIGNATURE**
15 10/07/13   MOTION FOR PRO HAC VICE ADMISSION OF H. BLAIR HAHN
16 10/07/13   VERTIFIED STATEMENT IF APPLICATION OF H. BLAIR FOR PRO HAC VICE
17            ADMISSION
18 10/07/13   PROPOSED ORDER GRANTING H. BLAIR HAHN PRO HAC VICE ADMISSION
19            *** SENT TO JUDGE FOR SIGNATURE ***

